UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:18-cv-62490-WPD

MARIA ZABALA,

    Plaintiff,

v.

UNITED AIRLINES, INC.,

    Defendant.

_____/

**DEFENDANT UNITED AIRLINES, INC.'S STATEMENT
OF UNDISPUTED MATERIAL FACTS IN SUPPORT
OF ITS MOTION FOR SUMMARY FINAL JUDGMENT**

Defendant, United Airlines, Inc. ("United") serves its Statement of Undisputed Material Facts in Support of its Motion for Summary Final Judgment and in support states as follows:

## I. Plaintiff's Initial Employment with United

1. On May 1, 2008, United hired Maria Zabala ("Plaintiff") as an Airport Administrative Specialist. LaScola Decl. at ¶ 5, Mar. 27, 2020.

2. Plaintiff was terminated by United on July 18, 2008 and was rehired on August 20, 2008. LaScola Decl. at ¶ 6, Mar. 27, 2020.

3. On August 1, 2011, Plaintiff assumed a role as an Airport Operations Station Support Coordinator. LaScola Decl. at ¶ 7, Mar. 27, 2020.

4. The job description for the Airport Operations Station Support Coordinator stated that responsibilities associated with the position included performing administrative activities and functions associated with scheduling payroll, accounts payable, report preparation and wellness administration associated with office and personnel functions. It further specified

    that the position would entail performing personnel-related duties including "filing, process[ing] payroll in accordance with provisions of union agreements and company policy," and "providing support for management by coordination and preparation of reports associated with personnel functions."  Ex. 2 to LaScola Decl., Mar. 27, 2020.

5. Plaintiff was unable to perform payroll-related tasks, which were essential functions of her job, with or without accommodations.  Pl. Dep. 41:3-6.

6. United's General Manager in Fort Lauderdale, Florida, Mark LaScola, has stated that payroll tasks were essential functions of her job as an Airport Operations Station Support Coordinator. LaScola Decl. at ¶ 9, Mar. 27, 2020.

## II. Applicable United Policies

7. At all times material, United's unpaid medical leave policy contained the following provisions:

    a. The length of leave is the shortest of the period of incapacity (certified by a doctor), three years (off work consecutively in any leave status), or a period of time equal to the employee's total length of service as long as the appropriate medical reports are submitted to and approved by the United Medical Department.

    b. In extenuating circumstances, extensions beyond the maximum leave period may be requested.  The request must be submitted 30 to 60 days before the expiration of leave.  An extension requires review by United Medical and approval by Human Resources.  An employee who does not return to work prior to exhausting the maximum leave period (including any approved extension) is separated.

    Ex. 2 to Rivera Torres Decl., Mar. 27, 2020; Ex. 1 to LaScola Decl., Mar. 27, 2020.

## III. Plaintiff's Participation in United's Medical Leave Program

8. In January 2015, Plaintiff requested and was approved for medical leave. Rivera Torres Decl. at ¶ 4, Mar. 27, 2020.

9. For the purposes of the three-year United Unpaid Medical Leave Policy, although Plaintiff ceased activity duty with United in January 2015, she was not designated as being on unpaid medical leave until June 1, 2015. Ex. 1 to Rivera Torres Decl., Mar. 27, 2020.

10. United sent Plaintiff monthly requests for medical documentation certifying her inability work. Each request invited Plaintiff to engage in United's reasonable accommodation program. Ex. 3 to Rivera Torres Decl., Mar. 27, 2020.

11. On March 28, 2018, United sent Plaintiff a letter stating that her condition would be reviewed at least sixty days prior to the expiration of her unpaid leave status. Ex. 4 to Rivera Torres Decl., Mar. 27, 2020.

12. On April 20, 2018, Plaintiff emailed United to inquire about the letter and request that her employment dates be modified so she could be terminated and receive lifetime flight benefits, which accrue after ten years of employment with United. E-mail from Maria Zabala (Apr. 20, 2018 3:46pm).

13. On April 27, 2018, United sent Plaintiff a letter to notify her that her unpaid medical leave would expire on June 1, 2018. Ex. 5 to Rivera Torres Decl., Mar. 27, 2020.

14. On May 18, 2018, Plaintiff sent United another facsimile asking if it would change her employment dates to allow her to receive lifetime flight benefits from United without ever returning to work. Facsimile from Maria Zabala to United (May 18, 2018 1:37pm).

15. On May 18, 2018 Plaintiff sent United a facsimile asking United to explain how to participate in the Reasonable Accommodation Process." Facsimile from Maria Zabala to United (May 18, 2018 1:39pm).

**IV.     Plaintiff's Initial Failure to Participate in United's Reasonable Accommodation Program**

16. In a call with Plaintiff on May 30, 2018, United provided an overview of the reasonable accommodation program to Plaintiff, and detailed the need for medical documents and an interpersonal discussion before an accommodation decision could be made. The representative then stated that United had not received any medical documentation substantiating the need for a medical accommodation. Plaintiff again asked about administratively changing her dates of employment so that she could receive lifetime flight benefits. Rivera Torres Decl. at ¶ 10, Mar. 27, 2020.

17. Later on May 30, 2018, Plaintiff sent an email to United stating she wanted to administratively change her dates of employment so that she could receive lifetime benefits from United without ever returning to work. Email from Maria Zabala (May 30, 2018 2:55pm).

18. On May 31, 2018, United emailed Plaintiff stating that it had left telephone messages about United's reasonable accommodation program on May 30, 2018 and May 31, 2018, and requesting that Plaintiff contact United to discuss. Ex. 6 to Rivera Torres Decl., Mar. 27, 2020.

19. Plaintiff responded on May 31, 2018 that she was aware her termination date was June 1, 2018. Email from Maria Zabala (May 31, 2018 12:09pm). United responded on May 31, 2018 by email and June 1, 2018 by letter, informing Plaintiff that United would like to speak with her about a reasonable accommodation, that a reasonable accommodation program meeting was scheduled for June 8, 2018, and asking her to supply medical records to support her request for a reasonable accommodation by June 7, 2018. Ex. 6,7 to Rivera Torres Decl., Mar. 27, 2020.

20. On June 4, 2018, United sent Plaintiff another letter confirming that the reasonable accommodation program meeting would take place on June 8, 2018 and asking for her medical records by June 7, 2018. It further informed her that the parties would "discuss possible reasonable accommodations which the company may be able to provide in your current position, or job opportunities outside your classification consistent with your restrictions." It closed by providing a telephone number that she could call if she could not attend the meeting or otherwise had any questions. Ex. 8 to Rivera Torres Decl., Mar. 27, 2020.

21. On June 4, 2018, Plaintiff sent an email to United indicating that she was out of state. Email from Maria Zabala (June 4, 2018 4:44pm). United responded the same day with an email stating it would still hold the reasonable accommodation meeting on June 8, 2018, and that Plaintiff should send medical documentation to United by June 7, 2018.

22. On June 6, 2018, Plaintiff emailed United acknowledging that she receiving an email notifying her that United was attempting to engage her in its reasonable accommodation program on May 31, 2018, notifying United that she would not be attending the reasonable accommodation program meeting on June 8, 2018, and acknowledging that her failure to participate in the reasonable accommodation program would likely lead to her termination. Email from Maria Zabala (June 6, 2018 4:28pm).

23. Plaintiff never requested any specific and identifiable reasonable accommodation from United to return to work in 2018. Rivera Torres Decl. at ¶ 11, Mar. 27, 2020.

24. Plaintiff never identified how any reasonable accommodation would allow her to return to work and perform as an Airport Operations Station Support Coordinator. Rivera Torres Decl. at ¶ 11, Mar. 27, 2020.

25. On June 8, 2018, Plaintiff did not show up to the reasonable accommodation program meeting or provide any medical information in response to United's request. Rivera Torres Decl. at ¶ 16, Mar. 27, 2020; LaScola Decl. at ¶ 18, Mar. 27, 2020.

26. On June 8, 2018, after Plaintiff refused to participate in United's reasonable accommodation program, Lascola made the decision to terminate Plaintiff and United sent Plaintiff a letter advising her that her employment had been terminated because she had exhausted her leave benefits by failing to return to work before the end of her three-year medical leave of absence. Ex. 9 to Rivera Torres Decl. at ¶ 16, Mar. 27, 2020; LaScola Decl. at ¶ 19, Mar. 27, 2020.

27. Plaintiff is unaware of anyone that was not terminated after failing to return to work before exhausting their three years of United's approved unpaid medical leave. Pl. Dep. 65: 10-19.

## V. Plaintiff's Second Failure to Participate in United's Reasonable Accommodation Program

28. On June 13, 2018, United decided to give Plaintiff another chance, and emailed and mailed her a letter apprising her of a second reasonable accommodation meeting on June 22, 2018 and asking her to provide medical records by June 21, 2018. Email from United (June 13, 2018 2:00pm); Letter from United to Maria Zabala (June 13, 2018); Ex. 10 to Rivera Torres Decl., Mar. 27, 2020.

29. On June 18, 2018, Plaintiff filed a charge against United with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC found no cause.

30. A medical note from Plaintiff's psychiatrist dated June 19, 2018 stated "I have her out of work due to a psychiatric illness." Work Restriction Form, Dr. Douglas M. Lanes, M.D. (June 19, 2018).

31. On June 22, 2018, Plaintiff failed to provide any medical documents in response to United's request, to show up at the reasonable accommodation program meeting. Ex. 18 to Rivera Torres Decl., Mar. 27, 2020.; LaScola Decl. at ¶ 19, Mar. 27, 2020.

32. On July 12, 2018, United sent Plaintiff a letter stating that because she did not submit any medical documentation in response to United's request or appear for the June 22, 2018 reasonable accommodation program meeting, she would remain separated from the company as of June 8, 2018.  Ex. 11 to Rivera Torres Decl., Mar. 27, 2020.

Respectfully submitted this 27th day of March 2019.

By: /s/ Patrick G. DeBlasio, III
Patrick G. DeBlasio, III, Esq.,
Florida Bar No. 871737
Email: pdeblasio@littler.com
Ryan P. Forrest, Esq.
Florida Bar No. 111487
Email: rforrest@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Facsimile: (305) 603-2552

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of March 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se identified on the attached Service List in the matter specified either via transmission of notices of electronic filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of electronic filing.

BY: /s/ Patrick G. DeBlasio, III
Patrick G. DeBlasio, III

## **SERVICE LIST**

*PLAINTIFF, PRO SE*
Maria Zabala
E-Mail: maryzabala@aol.com
3600 Mystic Pointe Drive
Apt. 502
Aventura, FL 33180

4828-8728-8760.2 087218.1030